*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WEST LANSING RETAIL DEVELOPMENT, LLC,

        Plaintiff-Counterdefendant-Appellant,

v

KRIS KRSTOVSKI and K2 RETAIL
CONSTRUCTION SERVICES, INC.,

        Defendants-Cross-Defendants-
        Appellees,

and

UNIFIED GROUP, LLC,

        Defendant-Counterplaintiff-Cross-
        Plaintiff-Appellee.

UNPUBLISHED
November 9, 2023

No. 365181
Eaton Circuit Court
LC No. 2022-000906-CB

K2 RETAIL CONSTRUCTION SERVICES, INC.,

        Plaintiff-Counterdefendant-Appellee,

v

WEST LANSING RETAIL DEVELOPMENT, LLC,

        Defendant-Cross-Defendant-
        Appellant,

and

UNIFIED GROUP, LLC,

No. 365183
Eaton Circuit Court
LC No. 2022-000907-CB

-1-

Defendant-Counterplaintiff-Cross-
Plaintiff-Third-Party Plaintiff-
Appellee,

and

ROHR GASOLINE EQUIPMENT, INC.,

Defendant-Third-Party Defendant,

and

KRIS KRSTOVSKI,

Third-Party Defendant-Appellee.

Before:  GLEICHER, C.J., and JANSEN and RICK, JJ.

JANSEN, J. (*dissenting*)

For the reasons that follow, I respectfully dissent.  I would vacate the trial court subrogation order because I do not believe that there was a valid lien.

Kris Krstovski was originally a member of West Lansing Retail Development, LLC (WLRD).  In 2018, WLRD started this multiphase development plan, called Delta Crossings, and a purchase agreement was entered between WLRD and Unified Group, LLC (UG), the owner of the property, for WLRD to purchase the property after each phase of construction was completed. WLRD retained K2 Retail Construction Services, Inc. (K2) to be the construction contractor; Krstovski was a principal of K2 as well.  The first two phases were purchased and developed. However, after several issues with funding, K2 issued a stop-work order in May 2022, Krstovski was removed from WLRD, and K2 filed a construction lien on UG's property that had not yet been conveyed because K2 had already made improvements to Phases III and IV of the project based on the purchase agreement between WLRD and UG.  UG asserted the construction lien was WLRD's responsibility, and that WLRD was in default of the purchase agreement for failing to comply with the deadlines.

As explained more fully in the majority opinion, several claims and crossclaims were filed among the parties, but relevant to this appeal is whether the construction lien was valid, and therefore, K2 could subrogate its claims.  K2 moved in the trial court "to subrogate WLRD and perform the Purchase Agreement with" UG, which the trial court granted.

The Construction Lien Act, MCL 570.1101 *et seq.* (CLA), provides that "[e]ach contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, . . . , the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required

-2-

the improvement." MCL 570.1107(1). This lien attaches to the entire interest of the owner or lessee, including any subsequently acquired interest. MCL 570.1107(2). The CLA provides the remedy of subrogation as follows:

> (4) If the rights of a person contracting for an improvement as a land contract vendee or a lessee are forfeited, surrendered, or otherwise terminated, any lien claimant who has provided a notice of furnishing or is excused from providing a notice of furnishing under [MCL 570.1108, MCL 570.1108a, or MCL 570.1109] and who performs the covenants contained in the land contract or lease within 30 days after receiving actual notice of the forfeiture, surrender, or termination is subrogated to the rights of the contracting vendee or lessee as those rights existed immediately before the forfeiture, surrender, or termination.

Further requirements for a valid lien are contained in MCL 570.1111 (relating to form, content, and notice).

The trial court held an evidentiary hearing to consider the validity of the construction lien. The court stated it was not sure whether the lien amount was accurate, but ultimately concluded that the amount was irrelevant. In concluding that the lien was valid, the court relied on the testimony of James Cisek, K2's project manager, finding his testimony credible regarding the work that was done and the time frame in which it was completed. The court concluded that "K2 performed work on the property that benefited and is an improvement on Phase III as contemplated by the Construction Lien Act. And I don't think there's any question that Mr. Krstovski had the authority to do it. And this is a remedial statute. There are cases that talk specifically about implied authority, this person has the apparent authority." The court concluded that because the lien was valid, subrogation was proper.

This Court reviews de novo the trial court's legal conclusions, and its factual findings for clear error. *Shahid v Dep't of Health and Human Servs*, 333 Mich App 267, 272; 963 NW2d 638 (2020). I find several issues with the trial court's findings and conclusions.

Clear and unambiguous statutory language must be enforced as written, "giving effect to every word, phrase, and clause." *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 520; 902 NW2d 430 (2017) (quotation marks and citation omitted). "If the statutory provision at issue is clear and unambiguous, it must be enforced as written, and no judicial construction is permitted or required." *Id*. MCL 570.1107(1) provides that a contractor may claim a construction lien for improvements made to real property against "the interest of the *owner or lessee* who contracted for the improvement to the real property. . . ." (Emphasis added.)

K2 filed the construction lien for improvements it made to Phase III of the project. However, under MCL 570.1107(1), K2 could not enforce the lien against UG, the actual owner of the property, as there was no contractual agreement between K2 and UG. The purchase agreement was between WLRD and UG, and WLRD contracted with K2 to do the construction work. However, K2 could not enforce the lien against WLRD because WLRD was neither the "owner or lessee who contracted for the improvement to the real property." *Id*. WLRD was in default of the purchase agreement for failing to purchase Phase III according to the given timelines. Thus, the trial court's finding that Krstovski, as a principal of K2, had "implied" or "apparent" authority to

make the improvements is without support. Because of this "missing link," I do not believe that there was a valid lien under MCL 570.1107(1). This is the risk WLRD took in entering the purchase agreement constructed as it was for work to be completed that would affect other phases. When WLRD defaulted, it bore the burden of the loss under the purchase agreement—not UG, the property owner.

Because there is no valid lien, K2 would not be entitled to subrogate under MCL 570.1107(4). Subrogation is defined as "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor," "[t]he equitable remedy by which a substitution takes place." *Black's Law Dictionary* (11th ed). K2 knew the risks it was taking when it agreed to be the general contractor on this project, and did the work beyond Phases I and II. When WLRD defaulted on the purchase agreement, WLRD lost all interest in the property. As such, K2 could not enforce a lien against WLRD under MCL 570.1107(1), nor "step into the shoes" of WLRD and subrogate its rights by replacing WLRD and performing the remainder of the purchase agreement. For these reasons, I would vacate the trial court's subrogation order.

/s/ Kathleen Jansen